UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-3484 PSG (PJWx) | Date | August 17, 2015 |
|---|---|---|---|
| Title | Sanchez, *et al.* v. The Ritz Carlton, *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order DENYING the Motion to Remand

Before the Court is Lavina Sanchez ("Sanchez") and Elvia Puentes's ("Puentes") (collectively, "Plaintiffs") motion to remand. Dkt. #20. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court DENIES the motion.

I.  Background

On February 27, 2015, Plaintiffs filed a wage-and-hour class action complaint in the Superior Court of the County of Los Angeles against The Ritz Carlton; Marriott Hotel Services, Inc.; Marriott International Services, Inc.; Marriott International Administration Services, Inc.; The Ritz Carlton Residences; Marriott International, Inc.; The Residences at L.A. Live; The Ritz Carlton Hotel Company, LLC; The Residences at L.A. Live Residential Association; and The Hotel and Residences at L.A. Live Master Association (collectively, "Defendants"). Dkt. #1, Ex. A.

Defendants timely removed pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Dkt. #1. Defendants' Notice of Removal ("NOR") asserted federal jurisdiction because all required CAFA elements were met. *See* NOR ¶¶5–38; 28 U.S.C. § 1332(d). After Defendants requested an amended complaint because the original was insufficiently detailed to formulate a response, *Motion to Remand* ("*MTR*") 13–14, Plaintiffs filed a First Amended Complaint ("FAC"), Dkt. #13. Plaintiffs subsequently filed this motion to remand to state court, arguing that the amount in controversy was below the required CAFA amount. Dkt. #20.

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-3484 PSG (PJWx) | Date | August 17, 2015 |
|---|---|---|---|
| Title | Sanchez, *et al.* v. The Ritz Carlton, *et al.* | | |

II. <u>Legal Standard</u>

A defendant may remove a civil action filed in state court if the action could have originally been filed in federal court. 28 U.S.C. § 1441. A plaintiff may seek to remand the case to the state court from which it came if the district court lacks subject matter jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). CAFA provides that district courts have original jurisdiction over any class action in which (1) the amount in controversy exceeds $5 million; (2) any plaintiff class member is a citizen of a state different from any defendant; and (3) the number of plaintiffs in the putative class is at least 100. *See* 28 U.S.C. § 1332(d). "[N]o antiremoval presumption attends cases involving CAFA." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)).

Under CAFA, the burden of establishing removal jurisdiction remains on the party seeking removal. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). "[A] defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197–98 (9th Cir. 2015). If the plaintiff challenges the amount in controversy, the defendant must submit summary-judgment-style evidence establishing the amount by preponderance of the evidence. *Id.* Plaintiffs can also submit evidence in opposition, *see id.* at 1198, but there is no requirement that they do so, *see Townsend v. Brinderson Corp.*, No. CV 14-5320 FMO (RZx), 2015 WL 3970172, at *3 (C.D. Cal. June 30, 2015); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890 GHK (JCx), 2015 WL 2452755, at *2 (C.D. Cal. May 21, 2015).

III. <u>Discussion</u>

    A. <u>The Court's Jurisdiction is Determined at the Time of Removal</u>

Defendants' NOR was based on the original state court complaint. *NOR* ¶¶1–4. Plaintiffs, however, reduced the size of the class, and consequently the amount in controversy, after removal in the FAC. *FAC* ¶¶4, 6, 20. Plaintiffs argue that the Court must remand the case because the allegations in the FAC do not meet the CAFA requirements. *Id.* ¶4; *MOR* 1–2, 10–14. Thus, the threshold question is which complaint controls the jurisdictional analysis.

"The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction." *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010); *see St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010); *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006) (per curiam).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-3484 PSG (PJWx) | Date | August 17, 2015 |
|---|---|---|---|
| Title | Sanchez, *et al.* v. The Ritz Carlton, *et al.* | | |

This rule alleviates forum-manipulation concerns that would result if post-removal events could eliminate jurisdiction. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007); *Burlington*, 606 F.3d at 381.

Courts have specifically cautioned against remand based on a post-removal amended complaint. *See, e.g.*, *Burlington*, 606 F.3d at 381; *Hamdy v. Guardsmark, LLC*, No. CV 08-6807 R (PLAx), 2009 WL 961375, at *2–4 (C.D. Cal. Apr. 8, 2009). But exceptions can occur when the complaint is amended for "legitimate purposes." *See Farnik v. FDIC*, 707 F.3d 717, 721 (7th Cir. 2013). Such legitimate purposes include the clarification of federal jurisdictional issues that were not clear in the original state court complaint, *see Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015), and the correction of a "scrivener's error," *see Schillinger v. Union Pac. Ry. Co.*, 425 F.3d 330, 333 (7th Cir. 2005).

Plaintiffs' original state court complaint proposed a class of "[a]ll persons who are or were employed by Defendants in California in a non-exempt, hourly-paid position at any time from February 7, 2011 until the date of certification ("Class")." *Compl.* ¶17. Plaintiffs filed the FAC at Defendants' request to add more detail. *MOR* 13. The FAC proposed the following class:

> All persons who are or were employed by defendants in California in non-exempt, hourly paid positions of (1) guest services representatives or residential coordinators, otherwise known as "Concierges" (functioning as hospital desk staff or reception attendants serving the needs of homeowners) and (2) "Security Officers" (also known as Security Guards or Loss Prevention Officers) at any Ritz or Marriott Residence in California at any time from February 7, 2011 until the date of certification ("Class").

¶20. The FAC itself recognized that this "drastically reduce[d]" the class size from "hundreds of members to dozens (and far fewer than 100 total)." *Id.* ¶4. Plaintiffs contend that this class-size amendment was for a legitimate purpose because it was made in response to Defendants' request for more detail. *MOR* 11, 13–14. Plaintiffs also contend that the FAC does not alter "the original pleading in any way other than to add clarifying details," and lacks "any earmark of forum manipulation." *Id.* 11–12.

These arguments are not persuasive. Plaintiffs do not contend that they amended the class description to fix an inadvertent error in the original Complaint. And Plaintiffs' assertion that the FAC simply added clarifying jurisdictional details is belied by the FAC's own admission that it "drastically" reduced the size of the class. *Cf. Benko*, 789 F.3d at 1117 (considering amendment that added clarifying details about the local controversy exception that were not

3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-3484 PSG (PJWx) | Date | August 17, 2015 |
|---|---|---|---|
| Title | Sanchez, *et al.* v. The Ritz Carlton, *et al.* | | |

necessary in the state complaint). Plaintiffs cite no authority for the proposition that a defendant's request to add detail to a vague complaint gives a plaintiff the ability to amend away jurisdiction. This makes sense—if the rule were otherwise, plaintiffs would have ample opportunity for forum manipulation by filing vague complaints in state court that could be narrowed after removal to eliminate jurisdiction.

Thus, "the general rule of 'once jurisdiction, always jurisdiction'" applies here, *United Steel*, 602 F.3d at 1092 n.3, and "the propriety of removal is determined solely on the basis of the pleadings filed in state court," *Williams*, 471 F.3d at 976.

B.  Defendants Properly Removed this Case

The Court now turns to whether Defendants' NOR properly established jurisdiction. There is no dispute that the original Complaint included minimally diverse parties and more than 100 putative class members. Plaintiffs, however, argue that Defendants failed to meet their burden of establishing removability because Defendants' amount in controversy is based on "a series of assumptions and unsupported calculations." *MTR* 8. The Court disagrees.

The NOR included a declaration by Marriott International Administrative Services, Inc. Area Director of Human Resources Richard Spade that the total number of non-exempt Marriott employees in California was in excess of 10,000 during the relevant periods, with 1,784 at LA Live (where Plaintiffs both worked); these employees worked in excess of 500,000 total workweeks, with 191,762 at LA Live; average pay was $14.70 per hour, with $15.28 at LA Live; and more than 1,000 employees were separated in this period, with 20 at LA Live. *Spade Decl.* ¶13. Based on this evidence, the NOR calculated the potential amount in controversy for employees solely based at LA Live:

- Overtime Compensation: Assuming that each employee worked thirty minutes of overtime every other week, the amount in controversy would be $2,197,592.52 (191,762 workweeks, divided by 2, multiplied by $22.92 (the average hourly wage of $15.28 with the 1.5 overtime multiplier)).

- Meal Breaks: Assuming that each employee missed one meal break every other week, the amount in controversy would be $1,465,061.68 (191,762 workweeks, divided by 2, multiplied by $15.28).

- Rest Breaks: Assuming that each employee missed one rest period every other week, the amount in controversy would be $1,465,061.68 (191,762 workweeks, divided by 2, multiplied by $15.28).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-3484 PSG (PJWx) | Date | August 17, 2015 |
|---|---|---|---|
| Title | Sanchez, *et al.* v. The Ritz Carlton, *et al.* | | |

- Wage Statements: Assuming that every wage statement was inaccurate, and that each employee had the statutory maximum damages of $4,000, the amount in controversy would be $5,012,000.000 (1,253 employees who worked one year prior to the filing of the complaint multiplied by $4,000).

- Unpaid Termination: Assuming that all twenty terminated employees were not paid and owed waiting time penalties, the amount in controversy would be $75,544.00 (20 workers multiplied by the average hourly wage multiplied by thirty eight-hour days).

The combined amount in controversy at the LA Live location alone was therefore "conservative[ly]" calculated to exceed $10 million. *NOR* ¶¶8–38.

Plaintiffs argue that these estimates are derived from "a series of 'if-then' scenarios while omitting any concrete evidence for the 'if' portions." *MTR* 8. Plaintiffs are correct that removal calculations based on speculation and unsupported assumptions are insufficient to establish the amount in controversy by a preponderance of the evidence. *See Ibarra*, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."); *Page v. Luxottica Retail N. Am., Inc.*, No. CV 13-1333 MCE (KJN), 2015 WL 966201, at *2–7 (E.D. Cal. Mar. 4, 2015) (finding assumed violation rate unduly speculative, unsupported by evidence, and inconsistent with the allegations in the complaint). But "defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation." *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. CV 14-9809 SVW (PJ), 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015); *see also Amaya v. Consol. Container Co., LP*, No. CV 15-3369 SVW (PLA), 2015 WL 4574909, at *2 (C.D. Cal. July 28, 2015) ("[D]efendants should not be required to fall on their swords to establish the propriety of removal jurisdiction.").

For the missed meal break, missed rest break, and unpaid overtime causes of action, the Complaint alleged that Defendants had a "policy and/or practice" of understaffing that led to off-the-clock work with no overtime pay, and generally alleged that Plaintiffs and other class members were not provided with meal or rest breaks. *Compl.* ¶¶46, 54, 60. Based on these allegations, the NOR assumed that each employee missed one meal, missed one rest break, and had thirty minutes of unpaid overtime every other week. *NOR* ¶¶19, 23, 26. Thus, the question is whether these assumptions were reasonable. *See Ibarra*, 775 F.3d at 1197. Courts, however, have taken inconsistent approaches to judging reasonableness when, as here, the Complaint does not clearly suggest a violation's frequency. *See Duberry v. J. Crew Grp., Inc.*, No. CV 14-8810 SVW (MRW), 2015 WL 4575018, at *3 (C.D. Cal. July 28, 2015) (noting inconsistent

5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-3484 PSG (PJWx) | Date | August 17, 2015 |
|---|---|---|---|
| Title | Sanchez, *et al.* v. The Ritz Carlton, *et al.* | | |

approaches); *compare Johnson v. Sunrise Sr. Living Mgmt., Inc.*, No. CV 15–2297 BRO (VBKx), 2015 WL 3830291, at *6–9 (C.D. Cal. June 18, 2015) (rejecting proposed amount in controversy in part because defendant did not submit sufficient evidence of potential liability), *with Mejia*, 2015 WL 2452755, at *3–6 (accepting reasonable assumptions based on the complaint and generalized employment data).

The Court nonetheless finds that Defendants' assumed violation rates are appropriate. Other courts have accepted similar assumed violation rates for analogous allegations that leave unclear exactly how often a violation occurred. *See, e.g.*, *Tajonar v. Echosphere, L.L.C.*, No. CV 14-2732 LAB (RBB), 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015) (assuming one violation per employee was a "conservative" estimate); *Oda v. Gucci Am., Inc.*, No. CV 14-7469 SVW (JPRx), 2015 WL 93335, at *4–5 (C.D. Cal. Jan. 7, 2015) (finding that allegations of a "policy or practice" allowed for a 50 percent violation rate); *cf. Ibarra*, 775 F.3d at 1198–99 (finding allegations of a "pattern or practice" did not support an assumed 100 percent violation rate). Here, Defendants offered conservative, plausible violation rates not inconsistent with the allegations in the Complaint. Plaintiffs do not offer any evidence indicating that lower violation rates were more appropriate. *See Unutoa*, 2015 WL 898512, at *3 ("Notably, Plaintiff fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation. Plaintiff does not even submit his own declaration stating that he experienced less frequent rates of violation than those asserted by Defendants."). Demanding much more from Defendants would essentially require them to prove the merits of Plaintiffs' case. *See id.*

The amount in controversy from the missed meal breaks, rest breaks, and unpaid overtime, as calculated by Defendants, satisfies the $5 million CAFA requirement. But it appears Defendants made a calculation error; the NOR assumes thirty minutes of unpaid overtime every other week, but then calculates the amount in controversy as if one hour were assumed. *See NOR* ¶19 (multiplying by $22.92, the rate for one full hour of overtime). The Court, however, still finds the amount-in-controversy requirement satisfied. The missed meal break, rest break, and unpaid overtime amounts in controversy, properly calculated, are $4,028,919.62. This total does not include additional damages from improper wage statements or PAGA, attorney's fees, or potential damages for the thousands of other non-exempt, hourly employees at other locations in California. Combined, these additional potential damages easily

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-3484 PSG (PJWx) | Date | August 17, 2015 |
|---|---|---|---|
| Title | Sanchez, *et al.* v. The Ritz Carlton, *et al.* | | |

total over $1 million.[1] The Court therefore finds that Defendants have proven by preponderance of the evidence that all CAFA requirements are met and federal jurisdiction is proper.

IV.     Conclusion

The Court DENIES Plaintiffs' Motion to Remand.

**IT IS SO ORDERED.**

---

[1] The NOR calculated the improper wage statement amount in controversy as over $5 million. The Court, however, cannot base CAFA jurisdiction on this figure alone because the Complaint did not include allegations supporting a 100 percent violation rate. *See Compl.* ¶63 (only stating that "Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements"); *Ibarra*, 775 F.3d at 1198–99; *Rosales v. Staples Contract & Commercial, Inc.*, No. CV 15-949 JFW (DTBx), 2015 WL 4537577, at *3–4 (C.D. Cal. July 27, 2015).